## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Baltimore Division

| | |
|---|---|
| LISA A. WOLFF, )<br><br>Plaintiff, )<br><br>v. )<br><br>LITTON ADVANCED SYSTEMS,<br>INC. )<br>and )<br><br>NORTHROP GRUMMAN SYSTEMS<br>CORPORATION )<br><br>Defendants. ) | CA No. L02-3932 |

## DEFENDANT NORTHROP GRUMMAN CORPORATION'S
## REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

James J. Kelley (Bar No. 06669)
Christine B. Cox (Bar No. 14878)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C.  20036
202.739.3000
202.739.3001 (facsimile)

Counsel for Defendant
NORTHROP GRUMMAN CORP.

Dated:  October 24, 2003

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................ii

INTRODUCTION ..........................................................................................................1

ARGUMENT..................................................................................................................2

I. PLAINTIFF HAS SET FORTH NO GENUINE ISSUE OF MATERIAL FACTS IN
    DISPUTE SUCH THAT A REASONABLE JURY COULD FIND FOR
    PLAINTIFF ON HER CLAIM OF SEXUAL HARASSMENT.......................................3

    A. Plaintiff Has Not Established That Mr. Mazzo Used Profanity "Because of"
    Her Sex.............................................................................................................4

    B. Plaintiff Fails to Identify a Triable Issue on Her Claim That Mr. Mazzo's
    Profanity Was So Severe as to Alter the Conditions of Her Employment ............7

    C. Plaintiff Fails to Establish that Liability Could be Imputed to Northrop
    Grumman Because the Company Maintained a Sexual Harassment Policy
    That Plaintiff Availed Herself of and Because Adequate Remedial Steps
    Were Taken Against Mr. Mazzo........................................................................11

II. PLAINTIFF FAILS TO SET FORTH ANY EVIDENCE OF INTENTIONAL
    GENDER DISCRIMINATION...............................................................................14

    A. Plaintiff Identified No Material Facts in Dispute That Prove a Prima Facie
    Case of Gender Discrimination Based on Failure to Hire or Constructive
    Discharge .........................................................................................................14

    B. Plaintiff Cannot Establish That The Stated Reason For Northrop Grumman's
    Decision to Offer Her a Position Was Pretextual..............................................16

III. RETALIATION..................................................................................................17

    A. Plaintiff Has Failed to Establish a Prima Facie Case of Retaliation or That the
    "Real Reason" for the Actions was Retaliation..................................................17

IV. PLAINTIFF HAS ABANDONED HER BREACH OF CONTRACT CLAIM...................18

CONCLUSION..............................................................................................................19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. G.D.C., Inc.*, 281 F.3d 452 (4th Cir. 2002) .................................................11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................2

*Baskerville v. Culligan International Co.*, 50 F.3d 428 (7th Cir. 1995) ............................11

*Beale v. Hardy*, 769 F.2d 213 (4th Cir. 1985) ...........................................................3, 16

*Bristow v. The Daily Press, Inc.*, 770 F.2d 1251 (4th Cir. 1985) ....................................16

*Burlington Industrial, Inc. v. Ellerth*, 524 U.S. 742 (1998) ......................................3, 11, 12

*Evans v. Technologies Applications & Service Co.*, 80 F.3d 954 (4th Cir. 1996) .....................2, 3, 16

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ........................................3, 7, 11, 12

*Felty v. Graves-Humphreys Co.*, 818 F.2d 1126 (4th Cir. 1987) ..............................2, 3, 16

*Harris v. Forklift System, Inc.*, 510 U.S. 17 (1993) ........................................................11

*Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255 (4th Cir. 2001) .........................................6, 7

*Lewis v. Forest Pharmaceuticals, Inc.*, 217 F. Supp. 638 (D. Md. 2002) ...........................3

*Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986) ......................................................3

*Ocheltree v. Scollon Products, Inc.*, 335 F.3d 325 (4th Cir. 2003) ....................5, 6, 7, 8, 9

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998) .............................1, 7, 9

*Paroline v. Unisys Corp.*, 879 F.2d 100 (4th Cir. 1989) ...........................................6, 11, 12

*Rohan v. Networks Presentation LLC*, 192 F. Supp. 2d 434 (D. Md. 2002) .......................8

*Smith v. First Union National Bank*, 202 F.3d 234 (4th Cir. 2000) ............................6, 7, 10

*Spriggs v. Diamond Automobile Glass*, 242 F.3d 179 (4th Cir. 2001) ..............................18

*Taylor v. Virginia Union University*, 193 F.3d 219 (4th Cir. 1999) ...............................16

*Ward v. Johns Hopkins University*, 861 F. Supp. 367 (D. Md. 1994) ..............................6, 7

## STATUES AND RULES

Rule 56, Federal Rules of Civil Procedure ............................................................................1

Rule 105, Local Rules of the District of Maryland.................................................................1

Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et. seq.</u> (2003) ......................................11, 17

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 105 of the Local

Rules of the District of Maryland, Defendant Northrop Grumman Corp. ("Northrop Grumman"

or "Defendant "), through its undersigned counsel, respectfully submits this Reply, in support of

its Motion for Summary Judgment, and in response to Plaintiff's Opposition to that Motion.

## INTRODUCTION

The law is clear:

> We have never held that workplace harassment, even harassment between
> men and women, is automatically discrimination because of sex merely
> because the words used have sexual content or connotations. . . .
> [P]laintiff . . . must always prove that the conduct at issue was not merely
> tinged with offensive sexual connotations, but actually constituted
> "*discrimina[tion]* . . . because of . . . sex."

Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998) (emphasis in original).

Plaintiff's Opposition fails to identify any genuine issue of material fact in dispute on any

element of Plaintiff's claims that would preclude this Court from granting Northrop Grumman's

Motion for Summary Judgment on Plaintiff's sexual harassment, gender discrimination,

retaliation and breach of contract claims.  Plaintiff alleges that Mr. Mazzo's use of profanity

during part of one telephone conference call that lasted less than an hour and his use of the same

profanity in one meeting approximately three months later constituted unlawful sexual

harassment.  Mr. Mazzo's language admittedly was unprofessional and inappropriate.  Following

Plaintiff's filing of a grievance and a subsequent investigation, appropriate and effective

corrective action was taken against Mr. Mazzo, and ameliorative measures were instituted on

behalf of Plaintiff, at her request.

There is no evidence here, beyond Plaintiff's unsupported self-perception, that she was

treated any differently than males on this one telephone call, or that the profanity used was

directed towards her because she is female.  Moreover, there is no evidence of a tangible,

adverse employment action taken against Plaintiff.  The undisputed facts establish that, in

offering Plaintiff employment following Northrop Grumman's acquisition of her employer,

neither Litton Advanced Systems ("LAS"),[1] nor Northrop Grumman discriminated against her

based on her gender or retaliated against her for having filed an internal grievance with LAS

three months earlier.  Because the undisputed facts demonstrate that Plaintiff was not subjected

to sexual harassment, discrimination, or retaliation, and because Plaintiff does not rebut Northrop

Grumman's assertion that it did not breach her "Agreement to Stay," Northrop Grumman is

entitled to summary judgment as a matter of law on all remaining counts of the Complaint.

### ARGUMENT

In order to defeat a properly supported motion for summary judgment, a non-movant

"'must set forth *specific facts* showing that there is a genuine issue for trial.'"  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. Rule 56(e) (emphasis

added)).  Although "courts must take special care when considering a motion for summary

judgment in a discrimination case because motive is often the critical issue, *summary judgment

disposition remains appropriate if the plaintiff cannot prevail as a matter of law*."  Evans v.

Technologies Applications & Serv. Co., 80 F.3d 954, 958-59 (4th Cir. 1996) (cited at Opp. at 3)

(emphasis added to restore language omitted by Plaintiff).  To that end, this Court has an

affirmative obligation to "prevent 'factually unsupported claims' . . . from proceeding to trial."

Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex Corp. v.

Catrett, 477 U.S. 317, 323-24 (1986)).

---

[1]    LAS was a business unit of Litton Industries, Inc. ("Litton"), which was acquired by
       Northrop Grumman in April 2001.  SJ Motion at 1.

Plaintiff offers no evidence on any disputed material fact "such that a reasonable jury could return a verdict" in her favor.  <u>Lewis v. Forest Pharmaceuticals, Inc.</u>, 217 F. Supp. 638, 645 (D. Md. 2002).  Instead, she identifies only conclusory statements, opinions, and speculation, without any supporting record evidence, or facts that, while arguably in dispute, are not material to the resolution of her claims.  Unsupported speculation or reliance on non-material factual disputes is insufficient to defeat a motion for summary judgment.  <u>See, e.g.</u>, <u>Evans</u>, 80 F.3d at 960; <u>Felty</u>, 818 F.2d at 1128; <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985).

**I.    PLAINTIFF HAS SET FORTH NO GENUINE ISSUE OF MATERIAL FACTS IN DISPUTE SUCH THAT A REASONABLE JURY COULD FIND FOR PLAINTIFF ON HER CLAIM OF SEXUAL HARASSMENT**

The elements required to establish a <u>prima facie</u> case of sexual harassment are not in dispute.  SJ Motion at 17 (citations omitted); Opp. at 4 (citation omitted).[2/]  Plaintiff fails to establish that Mr. Mazzo's use of profanity on the two identified occasions was "because of" Plaintiff's sex, that it was sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment, and that liability could be imputed to Northrop Grumman.  Because Plaintiff fails to establish each of these predicate conditions, she cannot avoid summary judgment for the Company.

---

[2/]    Although Plaintiff correctly sets out the four elements of a sexual harassment claim (Opp. at 4), she improperly cites <u>Meritor Savings Bank v. Vinson</u>, 477 U.S. 57, 65 (1986) for the definition of sexual harassment (Opp. at 5).  In 1998, the Supreme Court's companion decisions in <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742 (1998) and <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998), restated the law concerning sexual harassment to establish "manageable standards to govern employer liability" in sexual harassment claims.  <u>Faragher</u>, 524 U.S. at 785.

### A.     Plaintiff Has Not Established That Mr. Mazzo Used Profanity "Because of" Her Sex

There is no dispute that Mr. Mazzo commonly used profanity in the workplace, but Plaintiff never previously considered this language to be sexual harassment.  See Wolff Dep. at 33-34, 48-49, 117-19; Mazzo Dep. at 101.  Indeed, Plaintiff did not regard the use of the word "fuck"[3/] with males on the August conference call[4/] to constitute unlawful sexual harassment.  Opp. at 6.  However, when the word was directed towards her on this one call, she deemed it unlawful.  Id.

There is no dispute that Mr. Mazzo used profanity in this call because he was frustrated and angry about the failure of Plaintiff's work organization to conclude a server transition project in a timely fashion and the impact of that failure on Company operations across two offices.  See Edwards Exs. 8-14 (describing work issue in dispute).  In her grievance, Plaintiff acknowledged that Mr. Mazzo "discussed the lack of progress in consolidating the processes and practices [at issue;]. . . . [that] [i]t is not clear who in particular [Mr. Mazzo] was directing his displeasure (in progress)" and that "[t]hroughout this portion of the teleconference Steve Mazzo was growing increasingly frustrated."  Id. at 2.  Only eight sentences of Plaintiff's three page, single-spaced grievance relate to Mr. Mazzo's use of profanity.  Id. at 3-4.  Plaintiff also acknowledged that the profanity directed towards her was specifically in reference to actions that she took or work that

---

3/     Although Plaintiff notes that "*The American Heritage Dictionary* defines the word 'fuck' as . . . 'to have sexual intercourse with or to engage in sexual intercourse'" (Opp. at 7 n.1), Plaintiff's quotation is selectively incomplete.  That dictionary provides numerous other definitions, including "used in the imperative as a signal of angry dismissal;" "to act wastefully or foolishly;" "used to express extreme displeasure;" "fucking – used as an intensive [adjective];" "fuck over – to treat unfairly; take advantage of."  THE AMERICAN HERITAGE COLLEGE DICTIONARY 549 (3d ed. 1997).

4/     Contrary to Plaintiff's allegation (Opp. at 6), Northrop Grumman does not dispute the fact that Plaintiff was the only female on the telephone conference call.

Mr. Mazzo expected her to do. Id. at 2-4. For example, the "cover my fucking ass" comment was in response to Plaintiff's desire to "document what risks were assessed" in connection with what Mr. Mazzo had asked Plaintiff to do. Id. at 3. Plaintiff states that, "Steve began shouting profanities of a sexual nature *as he demanded that I stop delaying*. . . . [; he] us[ed] the 'f' word to *describe the affect my, or my department's, actions had on the people and programs managed in [San Jose]*"; and "while Steve was describing the affect the WorkManager database merge had on [San Jose] . . . his description included a ***characterization of my work*** . . . *as something that 'fucked over SJ.'*" Id. (emphasis added). Plaintiff's contemporaneous grievance was primarily dedicated to challenging Mr. Mazzo's statements concerning her work; it placed secondary weight on her harassment claims, with only a small portion dedicated to Mr. Mazzo's use of profanity. Edwards Ex. 7. This grievance confirms that Mr. Mazzo's profanity was driven by his frustration about the work shortcomings, and was unrelated to Plaintiff's gender.

Plaintiff's recitation of Mr. Mazzo's work-related frustration fits the descriptions given by the males on the telephone call – who were the targets of similar language – but only the Plaintiff perceived Mr. Mazzo's outburst to be sexually oriented. See Edwards Exs. 8-14; Plaintiff's Ex. 9. In fact, the record is void of any evidence that anyone besides Plaintiff believed Mr. Mazzo's profanity was related to anything other than the work dispute or that his profanity was in any way sexual. See Edwards Exs. 8-14; Plaintiff's Ex. 9.

The "because of sex" prong of a prima facie case of sexual harassment requires a showing that the conduct complained of was "based on the plaintiff's sex." Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003). "The critical issue [in the 'because of sex' inquiry] is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Id. (citations omitted); see

also Lack v. Wal-Mart Stores, Inc., 240 F.3d 255, 261, 262 (4th Cir. 2001) ("it is not enough that the challenged conduct be sex-specific;" conduct that was "sexually tinged harassment" was not equivalent to "harassment because of sex").  Plaintiff cites three cases, Ocheltree, 335 F.3d at 331-32, Smith v. First Union Nat'l Bank, 202 F.3d 234 (4th Cir. 2000), and Ward v. Johns Hopkins Univ., 861 F. Supp. 367 (D. Md. 1994), to support her argument that she was harassed "because of" her sex.  Opp. at 6.  These cases are easily distinguishable from the facts at issue here.

In Ocheltree, plaintiff was subjected, on a daily basis, to explicit sexual talk and actions including the use of a female mannequin to mimic sexual activities, forced exposure to sexually explicit photos, descriptions of homosexual and heterosexual sex and bestiality.  Ocheltree, 335 F.3d at 328-29, 333.  The court held that the "men behaved as they did to make [plaintiff] uncomfortable and self-conscious . . . . [and that] the conduct . . . was intended to provoke [plaintiff's] reaction as a woman."  Id. at 332.  In Ocheltree, Plaintiff was treated differently because she was a woman.  Id.  That is not the case here.  In this matter, Mr. Mazzo used abusive, profane language with the men on the call as well as with Plaintiff.  Plaintiff was treated no differently "because of" her sex.  See Edwards Exs. 8-14 (generally reporting profane language used by Mr. Mazzo); Plaintiff's Ex. 9.

In Smith, the alleged harasser made "[e]xplicit and derogatory references to women," included stating that he "preferred a male in the . . . position because males are 'natural leaders;'" "that women should not be in management because they are 'too emotional to handle a managerial role;'" "that [any female] employee [who was upset] was menstruating or that she needed a 'good banging;'" "that the only way for a woman to get ahead at [the employer] was to spread her legs;" "that he wished he had been a woman so that he could 'whore his way through

life;'" and "that women should be barefoot and pregnant." <u>Smith</u>, 202 F.3d at 238-39, 242.  This language "ma[de] it clear that [the harasser] singled [the plaintiff] out for harassment because of her gender." <u>Id.</u> at 242.  In contrast, none of Mr. Mazzo's profanity referenced women and his use of profanity applied across the genders, so it was not "because of" Plaintiff's sex.  <u>See, e.g.</u>, <u>Lack</u>, 240 F.3d at 262 (plaintiff who showed that individual who "was just an indiscriminately vulgar and offensive supervisor, obnoxious to men and women alike," failed to establish sexual harassment).

Finally, Plaintiff cites <u>Ward</u> for the proposition that "conduct need not be accompanied by explicit sexual comments in order for a finder of fact to determine that it is sexual in nature." Opp. at 6 (citing <u>Ward</u>, 861 F. Supp. at 375).  In <u>Ward</u>, this Court found that offensive conduct was engaged in "because of" the plaintiff's sex where the conduct included "brushing up against [plaintiff], whispering in her ear, and touching her lower back."  <u>Id.</u>  No physical contact is alleged here – the only allegations consist of profanity in the telephone conference and one subsequent private meeting.

Plaintiff has not established that Mr. Mazzo's profane language was used "because of" Plaintiff's sex, and so, there is no cognizable claim against Defendant.

### B.    Plaintiff Fails to Identify a Triable Issue on Her Claim That Mr. Mazzo's Profanity Was So Severe as to Alter the Conditions of Her Employment

Courts apply the "reasonable person" standard to determine whether an environment is sufficiently hostile or abusive to be considered unlawful.  <u>Faragher</u>, 524 U.S. at 787; <u>Oncale</u>, 523 U.S. at 81; Opp. at 8 (citing <u>Anderson v. G.D.C., Inc.</u>, 281 F.3d 452 (4th Cir. 2002)); <u>Ocheltree</u>, 335 F.3d at 333.  In order to be unlawful, the alleged behavior must be both subjectively and objectively offensive.  <u>Faragher</u>, 524 U.S. at 878; <u>Oncale</u>, 523 U.S. at 81; <u>Ocheltree</u>, 335 F.3d at 333.  This determination requires consideration of "all of the circumstances, including the

frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Ocheltree, 335 F.3d at 333. Even if Plaintiff could conclude that Mr. Mazzo's profanity was "because of" her sex, she has still failed to establish the "severity" element of actionable harassment.

Plaintiff bases her sexual harassment claim on one telephone conference call that lasted for 45 minutes (Edwards Ex. 12 at 2), during a portion of which Mr. Mazzo used profanity, and arguably, one subsequent private meeting in which Mr. Mazzo allegedly used the word "fuck."[5/] SJ Motion Facts ¶¶ 5-7, 18-19; Opp. at 9-11. The lack of repetition of Mr. Mazzo's comments weighs heavily against Plaintiff.[6/] Plaintiff obviously recognizes this weakness of her case and errs by relying on Rohan v. Networks Presentation LLC, 192 F. Supp. 2d 434 (D. Md. 2002) for the proposition that a single incident can form the basis of a harassment claim (Opp. at 12). Rohan involved a disability discrimination claim where the defendant forced the plaintiff to disclose to 30 co-workers "intimate personal details" including that she was an incest survivor and was on medication for mental impairments. Id. at 438. Plaintiff was not subjected to any actions similar to the behavior that occurred in Rohan.

As a fallback, Plaintiff simply alleges that the profanity used by Mr. Mazzo, in her opinion, "approach[es]" a level of being sufficiently severe so as to make her work environment

---

5/     Plaintiff's reference to an alleged cartoon (Opp. at 10) is not admissible and cannot defeat summary judgment. First, it is wholly unsubstantiated. Wolff Dep. at 98-101, 116-17 (admitting she never saw the alleged cartoon, did not know what it entailed, did not know or attempt to find out who left her the voicemail about it, and her only knowledge of this was based on the alleged voicemail heard only by Plaintiff). Second, even if it existed, there is no evidentiary link to the Company or its managers.

hostile or abusive. Opp. at 7. Comments must more than "approach" severity to constitute actionable harassment; they must be objectively severe (Oncale, 523 U.S. at 81-82; Ocheltree, 335 F.3d at 333), and Plaintiff must establish the elements of her claim with proven fact, not personal opinion.

In an effort to establish that Mr. Mazzo's behavior was "sufficiently severe," Plaintiff shifts her focus to the alleged psychological impact[7] of this one incident on her, and her opinion that the telephone conference was "tantamount to a verbal rape."[8] Opp. at 11-12. Assuming these allegations to be true for purposes of the pending motion, they only go to establishing the *subjective* severity of this incident, and not its *objective* severity. Plaintiff cannot escape summary judgment by subjective belief alone. See, e.g., Oncale, 523 U.S. at 81; Ocheltree, 335 F.3d at 333. The fact that no one on the conference call other than Plaintiff believed the profanity was sexual is controlling here (Edwards Exs. 8-14), not Plaintiff's subjective sense of personal offense.[9]

Despite her conclusory statements to the contrary (Opp. at 10), Plaintiff failed to establish any evidence that the alleged harassment interfered with her work, let alone that it created either

---

6/    Plaintiff does not – because she cannot – allege that the behavior she complains of was sufficiently *pervasive* so as to alter the conditions of her employment, she only argues that the frustrated outburst was sufficiently *severe*.

7/    Plaintiff's statement that she is "is still under [her psychologist's] care" is, at minimum, misleading, given the gap in her treatment from March 2002 until one session in April 2003, and then again in August, 2003. SJ Ex. 7.

8/    The belief that Mr. Mazzo's use of the word "fuck" constitutes "rape" evidences Plaintiff's ultra-sensitivity to profanity.

9/    Plaintiff's claims that in the November meeting, Mr. Mazzo told her that he intended her to understand his language on the August call to have a sexual meaning (Opp. at 6-7, 11, 19), is not a "material" admission because Mr. Mazzo's *intent* does not control whether language *objectively* – based on the "reasonable person" standard – rises to the level of being so severe as to create an abusive work environment.

an *abusive* or *hostile* work environment.  In fact, the record evidence proves otherwise.  First, although Plaintiff says that she "had difficulty performing her work" (Opp. at 10), there is no evidence that anyone in management perceived any drop off in performance.  On the contrary, the high regard for Plaintiff's work quality is evidenced by Northrop Grumman's decision to offer her a management position and Mr. Norton's and Ms. Flach's efforts to persuade her to accept the position she was offered.  Norton Decl. ¶¶ 6, 20; Flach Decl. ¶ 7.  Second, Plaintiff's request to be relieved from further work contact with Mr. Mazzo was immediately granted and preserved until she herself requested a meeting with Mr. Mazzo to reestablish a working relationship and agreed to have the restrictions lifted.  SJ Motion Ex. 15; Wolff Dep. at 80-83, 94.

In its Motion for Summary Judgment, Northrop Grumman discusses numerous cases in which courts have found behavior to be sufficiently severe to create a hostile or abusive work environment. See SJ Motion at 24; see also Smith, 202 F.3d at 243 (holding supervisor's "constant barrage of discriminatory remarks," coupled with physically threatening remarks that he would "slit a woman's throat," angry late-night phone calls to plaintiff and a paranoia that "women were 'out to get him,'" were sufficient to meet the severity prong of a prima facie case of sexual harassment).  In these cases, the language used was universally more sexually explicit than the profanity used by Mr. Mazzo, and was also accompanied by physical touchings, or other abusive behavior.  Northrop Grumman also lists a series of sexual harassment cases where the behavior complained of was found to be insufficiently severe to create an abusive or hostile work environment.  See SJ Motion at 23-24.  In response, Plaintiff was unable to provide any case support for her claim that Mr. Mazzo's profanity – albeit unprofessional – was unlawfully "severe or pervasive."  Opp. at 7-12.

Plaintiff fails to cite even one case where the only alleged harassment took place on one, or arguably two, occasions.  Even in <u>Baskerville v. Culligan Int'l Co.</u>, 50 F.3d 428, 430 (7th Cir. 1995), which involved nine verbal statements over seven months, the court overturned the jury verdict issued in plaintiff's favor, ruling that "[a] handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage."  <u>Id.</u> at 430-31 (citations omitted) (identifying as non-actionable "occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers").  The remaining cases cited by Plaintiff (Opp. at 7-9) all involve excessively sexual comments and either physical contact or explicit sexual gestures.  <u>See</u> <u>Harris v. Forklift Sys, Inc.</u>, 510 U.S. 17, 19-20 (1993); <u>Anderson v. G.D.C., Inc.</u>, 281 F.3d 452, 456 (4th Cir. 2002); <u>Oncale</u>, 523 U.S. at 77; <u>Paroline v. Unisys Corp.</u>, 879 F.2d 100, 103 (4th Cir. 1989).  Mr. Mazzo's behavior is comparable to conduct that courts have found <u>not</u> to be actionable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u>, and simply does not approach the level of being objectively severe.

**C.      Plaintiff Fails to Establish that Liability Could be Imputed to Northrop Grumman Because the Company Maintained a Sexual Harassment Policy That Plaintiff Availed Herself of and Because Adequate Remedial Steps Were Taken Against Mr. Mazzo**

Plaintiff acknowledges that in <u>Faragher</u> and <u>Ellerth</u>, the Supreme Court established an "affirmative defense[] [that] allow[s] an employer to avoid strict liability for a supervisor's sexual harassment of an employee if no tangible employment action was taken against the employee."  Opp. at 13 (citations omitted); <u>see also</u> SJ Motion at 26-27.  There is no dispute that the elements of the "affirmative defense" have been established here (Opp. at 12-16), but

Plaintiff claims that the defense is unavailable because Northrop Grumman "demoted" her.  Opp. at 13-14.  There is no evidence of any demotion in this case.[10]

Indeed, Plaintiff's own testimony establishes that she was not demoted.  She states she "discussed" a position at Northrop Grumman with Mr. Norton (SJ Motion at 26-27; Opp. at 13-14), that she later asked Mr. Norton what her duties would be "when [she] was in Northrup" (Wolff Dep. at 190), that Northrop "offered" a position that she did not accept (Wolff Dep. at 161-62), that the position was a "good position" (Wolff Dep. at 255), that the position paid the same salary she was earning at LAS (Wolff Dep. at 149), that the position was a managerial position with the same number of direct reports (Wolff Dep. at 228; Norton Decl. ¶¶ 6, 12), and that she met with Mr. Norton and Ms. Flach on December 11 who encouraged her to accept the position that had been offered (Wolff Dep. at 193-97).  Plaintiff cannot prove a demotion in the face of these facts.

Despite acknowledging the controlling effect of Faragher and Ellerth (Opp. at 13), Plaintiff seeks a different standard for employer liability in this case, citing Paroline v. Unisys Corp., 879 F.2d 100 (4th Cir. 1989) (Opp. at 14-15), a holding superceded by Faragher and Ellerth.  In arguing for the former Paroline standard of employer liability, Plaintiff claims that the remedial steps taken against Mr. Mazzo were not adequate.  Opp. at 14-15.  Even if Paroline represented the current state of the law, Plaintiff's argument would fail as a matter of fact.

There is no dispute that both LAS and Northrop Grumman maintained a comprehensive sexual harassment policy, a formal grievance was filed, an investigation was conducted and strict

---

[10]    Plaintiff later asserts that Northrop Grumman failed to hire her for a position that she wanted and that it constructively discharged her.  Opp. at 16-17.  For the reasons stated in Part II(A), below, Plaintiff identifies no evidence to support either of these alleged adverse employment actions.

corrective/remedial action was taken against Mr. Mazzo.  SJ Motion 26-27 (citing SJ Facts ¶¶ 2, 8-15); Opp. at 14-15.  The investigation included statements from every individual on the call and proceeded through all three steps of the grievance process.  Opp. at 14; SJ Motion Ex. 2; Edwards Exs. 2, 3, 8-14, 19; Edwards Decl. ¶¶ 7-11; Gering Dep. at 28, 53-55.[11]  The fact that Northrop Grumman accepted and implemented two – and not all four – of the recommendations made by the outgoing LAS President (Opp. at 15; SJ Facts ¶¶ 14-15) does not establish that the remedial actions were inadequate.  Northrop Grumman made a judgment that the appropriate remedial steps were to require Mr. Mazzo to attend anger management courses and to give him a written letter of reprimand, permanently placed in his personnel file, instructing him that his behavior was offensive, harassing, inappropriate and unprofessional, would not be tolerated, and that any recurrence would result in additional discipline, up to and including discharge.  Edwards Decl. ¶ 12; Edwards Ex. 20.  Plaintiff has provided no legal support for her position that such actions were inadequate.

        In Paroline, the court held that because prior similar acts of sexual harassment had occurred, the employer was on notice of the likelihood of the repetition of similar behavior and would be held accountable if it recurred.  Paroline, 879 F.2d at 106-07.  Even if Paroline were controlling case law, the facts here would not support imputing liability to Northrop Grumman on this theory because there had never previously been any allegation that Mr. Mazzo engaged in

---

11/     Plaintiff's allegation that a "bet" was made concerning the merit of her claim is unsupported by the record.  Opp. at 14.  Even if this were true, it has no material impact on determining whether adequate remedial steps were taken against Mr. Mazzo or whether a thorough investigation was done.

sexual harassment.[12/]  Opp. at 15; Mazzo Dep. at 40-41.  Plaintiff's reference to the fact that Mr.

Gering told Northrop Grumman that Mr. Mazzo was a "problem" manager (Opp. at 15) is not

dispositive of the issue of employer liability because it cannot be fairly inferred that the reference

was to harassing activity in contrast to Mr. Mazzo's harsh management style in general.  Gering

Dep. at 35-37.  Mr. Mazzo's "prior displays of anger and cursing" (Opp. at 15) are indicative of

no more than Mr. Mazzo's temper and foul language, and suggest no propensity towards sexual

harassment.

Because Plaintiff has failed to prove that the profanity Mr. Mazzo used in the conference

call was used "because of" her sex, that this alleged sexual harassment was subjectively and

objectively so severe or pervasive that it created a hostile or abusive work environment, or that

such harassment could be imputed to Northrop Grumman, she has failed to set forth a prima

facie case of hostile work environment sexual harassment or to prove that Northrop Grumman's

actions were pretextual.  Summary judgment must be granted to the Company on this claim.

## II.     PLAINTIFF FAILS TO SET FORTH ANY EVIDENCE OF INTENTIONAL GENDER DISCRIMINATION

In her Complaint, Plaintiff alleged intentional gender discrimination based on Northrop

Grumman's failure to hire her in a position of her choosing and, separately, for constructively

discharging her.  Complaint ¶¶ 62, 70.  Plaintiff fails to identify any record evidence that would

permit a jury to find in Plaintiff's favor on either of these claims (Opp. at 16-17).

---

12/     Plaintiff's identification of one allegation of discrimination made against the Company with which Mr. Mazzo purportedly was involved was an age discrimination allegation; it is not relevant to plaintiff's claim of sexual harassment.  Gering Dep. at 72.  No other allegation of harassment was in any way connected to Mr. Mazzo's.  Id. at 73.

**A.    Plaintiff Identified No Material Facts in Dispute That Prove a <u>Prima Facie</u> Case of Gender Discrimination Based on Failure to Hire or Constructive Discharge**

Citing nothing more than her own self-serving affidavit, Plaintiff alleges that, in retaliation for her grievance against Mr. Mazzo, and because of her sex, Northrop Grumman declined to offer her a "comparable position."[13/]  Opp. at 16.  Again, the material facts are undisputed.  In early November 2001, Plaintiff attended a "question and answer" session addressing the transition of jobs from Litton to Northrop Grumman, had conversations with Mr. Norton and Ms. Flach about job opportunities at Northrop Grumman, and discussed with Mr. Norton the possibility of combining management of mechanical and electrical functions in a single job.  Wolff Dep. at 147-49, 175-83, 200-01; Norton Decl. ¶¶ 4-6, 10; Flach ¶ 4.  A combined electrical/mechanical position would have been larger than the job Plaintiff held at LAS because Northrop Grumman's ES Sector operations are larger than LAS's comparable operations.  Wolff Dep. at 236; Norton Decl. ¶ 3.  Plaintiff offers no evidence to contradict Mr. Norton's statement that he decided on separate managers for the mechanical and electrical functions because of the business needs of the ES Sector and, specifically, because of the "large volume of work in each of these two distinct areas, . . . the number of individuals working in each of these areas, and . . . the strategic importance of each of these areas to the ES Sector."

---

13/    This claim directly contradicts Plaintiff's earlier allegation, addressed in Part I(C) above, that Northrop Grumman demoted her.  Opp. at 13-14.  Both the position offered to Plaintiff at Northrop Grumman and the one Plaintiff held at LAS were management positions, Plaintiff's salary would remain the same, she would have the same number of direct reports, and she would have a larger budget at Northrop Grumman than she had at LAS.  Wolff Dep. at 149, 173, 175, 187-90, 228, 236; Flach Decl. ¶ 4; Norton Decl. ¶¶ 3, 4, 9, 11, 12.  The comparability of these two positions, however, is not relevant to the failure to hire claim – even if the position offered was *not* comparable to the LAS position, this alone would not permit Plaintiff to make out a <u>prima facie</u> claim of failure to hire based on gender discrimination.

Norton Decl. ¶¶ 11, 12, 15.  These facts do not support either a gender discrimination or constructive discharge claim.

A constructive discharge "occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him [sic] to quit her job."  Opp. at 16 (citing Bristow v. The Daily Press, Inc. 770 F.2d 1251 (4th Cir. 1985)).  Plaintiff produces no evidence that her working conditions were "intolerable," that the actions taken to make her conditions intolerable were taken "because of her gender," or that this was "deliberately done" with the intent to force her to resign, which she must produce in order to establish constructive discharge based on gender discrimination.  See Taylor v. Virginia Union Univ., 193 F.3d 219, 237 (4th Cir. 1999) (citations omitted). The undisputed facts establish that Northrop Grumman offered Plaintiff what she referred to as a "good position" and a "wonderful job," at an annual salary of over $100,000.  SJ Motion at 32 (citing record evidence).  There is no evidence whatsoever of any "intolerable" working conditions, much less that the Northrop Grumman offer was made "because of" her sex.  Plaintiff's *subjective* beliefs about the position she was offered – admittedly a "good position" and a "wonderful job," at an annual salary of over $100,000 – fail utterly to prove allegedly "intolerable" working conditions.

> **B.    Plaintiff Cannot Establish That The Stated Reason For Northrop Grumman's Decision to Offer Her a Position Was Pretextual**

Plaintiff argues, again without supporting evidence, that the stated reasons for offering her the electrical management position, without other duties, are "clearly pretext."  Opp. at 17. In support of this assertion, Plaintiff states only that "a) the position as initially offered existed even after restructuring had been discussed and the takeover had begun and b) Wolff was offered a buyout under the terms of the Agreement to Stay if she would waive her rights to pursuing the discrimination claims against Defendant."  Opp. at 17.  Plaintiff's failure to produce evidence in

support of either of these claims defeats her Opposition.  See Evans, 80 F.3d at 960; Felty, 818 F.2d at 1128; Beale, 769 F.2d at 214.

There is no record evidence that the position Plaintiff wanted – a combined mechanical and electrical manager position – ever existed.  The only position ultimately filled, after rejection by Plaintiff, was the electrical manager job and the management responsibilities in that role were even reduced from what was offered to Plaintiff.  Norton Decl. ¶ 20.  The allegation that Northrop Grumman asked Plaintiff to execute a standard release of claims in connection with paying her under her "Agreement to Stay" (Opp. at 17) provides no evidence of gender discrimination.

Plaintiff's failure to identify any issue of material fact in dispute concerning her claims of gender discrimination for failure to hire and constructive discharge – either at the prima facie and/or pretext stages – prevents her from defeating Northrop Grumman's motion for summary judgment on this claim.

## III.    RETALIATION

### A.    Plaintiff Has Failed to Establish a Prima Facie Case of Retaliation or That the "Real Reason" for the Actions was Retaliation

For the reasons stated in Defendant's Memorandum in Support of its Motion for Summary Judgment, Plaintiff has no cognizable claim of retaliation.  She cannot establish an objectively reasonable belief that the behavior she complained of in her grievance violated Title VII and, for the reasons already noted in this reply memorandum, she cannot establish that an adverse employment action was taken against her, much less that there was any causal connection between these two.  SJ Motion at 37-39; supra Part I(C) and II(A).  Indeed, Plaintiff's allegations make it factually impossible for her to prove causation concerning her Northrop Grumman offer; she claims that she was offered a good, wonderful (but not comparable) position

at the end of November in retaliation for filing her grievance in early September, but she also asserts that in October, Northrop Grumman offered her what she considered to be a desirable position.  Opp. at 13-14, 16-17.

Plaintiff does not and cannot dispute that the actions she challenges concerning her daughter and her nephew were not actions taken against her; thus, they are factually insufficient to establish the second prong of a claim for retaliation, which requires a showing that adverse action be taken *against the employee/plaintiff*.  Opp. at 17; SJ Motion 36; <u>see also, e.g.</u>, <u>Spriggs v. Diamond Auto Glass</u>, 242 F.3d 179, 190 (4th Cir. 2001).  Plaintiff makes the conclusory assertion that the reasons given for the actions taken against her daughter and nephew "were transparently pretext" and that "[t]he only common denominator in each case is the fact that [Plaintiff] had an ongoing claim against [Northrop Grumman] for sexual harassment/discrimination."  Opp. at 21.  Plaintiff has stated her opinion, but has failed to identify any record evidence that connects the alleged changes in her nephew's work assignments, which allegedly occurred in late March 2002 (Plaintiff's Ex. 7 ¶ 7; Wolff Dep. at 137-38; Norton Decl. ¶ 21), or the Company's alleged failure to hire her daughter in a non-existent full-time position (Plaintiff's Ex. 6 ¶ 8; Wolff Dep. at 133-36; White Decl. ¶ 3) to her internal grievance filed six or more months earlier.

For all of these reasons, Northrop Grumman is entitled to judgment as a matter of law on Plaintiff's claims for retaliation.

## IV.    PLAINTIFF HAS ABANDONED HER BREACH OF CONTRACT CLAIM

Plaintiff fails to rebut, or even address, Northrop Grumman's argument in favor of granting summary judgment on Plaintiff's claim for breach of contract.  Thus, that claim has been abandoned and Northrop Grumman is entitled to a judgment as a matter of law.

**CONCLUSION**

Based on the foregoing reasons, Defendant respectfully requests that this Court grant

Northrop Grumman's Motion for Summary Judgment and dismiss the remaining Counts of

Plaintiff's Complaint, with prejudice.

Dated:  October 24, 2003                     Respectfully submitted,


                                             ___/s/_____
                                             James J. Kelley (Bar No. 06669)
                                             Christine B. Cox (Bar No. 14878)
                                             MORGAN, LEWIS & BOCKIUS LLP
                                             1111 Pennsylvania Ave., NW
                                             Washington, D.C.  20036
                                             202.739.3000
                                             202.739.3001 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of Defendant Northrop

Grumman Corporation's Reply Memorandum in support of its Motion for Summary Judgment,

was served this 24th day of October, 2003, by copy of electronic court filing and by Federal

Express on the following counsel of record for Plaintiff:

        Ronald M. Cherry, Esq.
        214 Washington Ave.
        Towson, MD  21204
        301.494.4954
        301.494.4952 (facsimile)

        Counsel for Plaintiff
        LISA A. WOLFF


        ____/s/_____
        Christine B. Cox