IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                               *

LISA A. WOLFF,                 *

      Plaintiff,               *

v.                             *      CIVIL NO.: WDQ-02-3932

LITTON ADVANCED SYSTEMS,       *
INC., et al.,
                               *
      Defendants.
*     *     *     *     *     *     *     *     *     *     *     *     *
```

MEMORANDUM OPINION & ORDER

Lisa Wolff has sued Litton Advanced Systems, Incorporated and Northrop Grumman Systems Corporation (collectively, "Northrop Grumman") for employment discrimination in violation of Title VII of the Civil Rights Act of 1964[1] ("Title VII"), the Prince George's County Human Rights Act,[2] and § 16 of the Maryland Code;[3] as well as for breach of contract.  Am. Compl. ¶¶ 61-74, 80-83.  Pending is Northrop Grumman's motion for summary judgment.  Because the issues have been adequately briefed by the parties, no hearing is necessary.  Local Rule 105.6 (D. Md. 2001).  For the following reasons, Northrop Grumman's motion for summary judgment will be granted.

---

[1] 42 U.S.C. § 2000e (2003).

[2] The County Code, Prince George's County, Maryland, Division 12, §§ 2-185 to -200 (1999).

[3] Md. Ann. Code art. 49B, § 16 (1957, 1998 Repl. Vol., 2000 Cum. Supp.).

BACKGROUND

Wolff was an engineer with Litton Advanced Systems, Incorporated ("Litton") from 1986 until 2001. Am. Compl. ¶ 27. In April 2001, Northrop Grumman Systems Corporation acquired Litton. Mot. for Summ. J. ¶ 1. Wolff worked for Northrop Grumman until January 2002. Am. Compl. ¶ 27.

On August 29, 2001, Wolff participated in a telephone conference call with several of her subordinates, peers, and superiors. *Id.* ¶ 31. Wolff was the only female participant in the conference. *Id.*

One of her superiors, Steve Mazzo, was frustrated by technical problems caused, he believed, by Wolff's department. *Id.* ¶¶ 32-33. To express his displeasure, Mazzo used vulgar terms for sexual intercourse. *Id.* ¶ 32. Although Mazzo used vulgarity when speaking to many of the call participants, he directed much of his hostility toward Wolff. Wolff Dep. 33-37. Wolff thought that Mazzo alluded to her actually engaging in sexual intercourse with him and other male employees. Am. Compl. ¶¶ 33-34.

After the call, Wolff filed an internal grievance with Northrop Grumman alleging sexual harassment. *Id.* ¶ 37. Afterward, some of her male coworkers "distanced" themselves from her and refused to acknowledge her. *Id.* ¶ 38.

While awaiting completion of the investigation, Wolff asked

to be notified whenever Mazzo was visiting her office location
and excused from contact with him.  Mot. for Summ. J. ¶ 10.
Northrop Grumman complied.  *Id.*

At the conclusion of the investigation, the grievance
investigator found that Mazzo had acted inappropriately and
recommended that he: (1) be suspended for two weeks; (2) attend
anger management training; (3) be issued a formal letter of
reprimand; and (4) write a letter of apology to Wolff.  *Id.* ¶ 13.
Northrop Grumman adopted two of the recommendations, and required
Mazzo to attend anger management counseling and to accept a
formal letter of reprimand in his personnel file.  *Id.* ¶ 15.

In October 2001, Northrop Grumman offered Wolff a position
which she accepted because she thought it was comparable to the
position she had held with Litton.  *Id.* ¶ 51.

In November 2001, Wolff requested a meeting with Mazzo to
re-establish a working relationship with him.  *Id.* ¶ 16.
Immediately following the meeting, Wolff informed Northrop
Grumman that Mazzo had again used offensive language with her.
Am. Compl. ¶ 45.  Northrop Grumman took no further action
against Mazzo.  *Id.*

From October until December 2001, Wolff met periodically
with Northrop Grumman representatives to determine the
responsibilities of her new position.  Mot. for Summ. J. ¶ 23.
Wolff understood that the organization of Northrop Grumman

differed from that of Litton and that she may not have the same
responsibilities. *Id.* Wolff made clear, however, that she
preferred to maintain supervision of at least two of the
components that she had managed before. *Id.*

In December 2001, Northrop Grumman notified Wolff that she
would only supervise one of the functions that she had previously
managed. *Id.* ¶ 24. Wolff declined the new position because she
did not want less responsibility, and thought that accepting the
position would retard her career. Am. Compl. ¶ 52. Northrop
Grumman representatives tried to convince Wolff to accept the
job. Norton Aff. ¶ 20. She resigned in February 2002. Mot. for
Summ. J. ¶ 29.


STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure,
summary judgment is appropriate when there is no genuine issue as
to any material fact, and the moving party is entitled to summary
judgment as a matter of law. In *Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 249 (1986), the Supreme Court explained that, in
considering a motion for summary judgment, "the judge's function
is not . . . to weigh the evidence and determine the truth of the
matter but to determine whether there is a genuine issue for
trial." A dispute about a material fact is genuine "if the
evidence is such that a reasonable jury could return a verdict

4

for the nonmoving party."  *Id.* at 248.  Thus, "the judge must ask
. . . whether a fair-minded jury could return a verdict for the
[nonmoving party] on the evidence presented."  *Id.* at 252.

In undertaking this inquiry, a court must view the facts and
the reasonable inferences drawn therefrom "in the light most
favorable to the party opposing the motion," *Matsushita Elec.
Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but
the opponent must bring forth evidence upon which a reasonable
fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317
(1986).  The mere existence of a "scintilla" of evidence in
support of the nonmoving party's case is not sufficient to
preclude an order granting summary judgment.  *Anderson*, 477 U.S.
at 252.

ANALYSIS

A.   Sexual Discrimination in Violation of Title VII

Title VII provides that "it shall be an unlawful employment
practice for an employer . . . to discriminate against any
individual with respect to his compensation, terms, conditions,
or privileges of employment, because of such individual's race,
color, religion, sex, or national origin."  42 U.S.C. § 2000e-
2(a)(1) (2003).  This clause is meant to "strike at the entire
spectrum of disparate treatment of men and women in employment."
*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78
(1998).  Harassment between men and women is not, however,

5

"automatically discrimination because of sex merely because the words used have sexual content or connotations." *Id.* at 79-80. The critical issue is whether "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* (*citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)).

1.    Hostile Work Environment

Wolff claims that Mazzo's use of offensive and abusive language among her peers created a hostile work environment, in violation of Title VII.  Am. Comp. ¶ 62.

To prevail on a hostile work environment claim, a plaintiff must establish that: (1) she suffered unwelcome conduct; (2) the conduct was based on gender; (3) the conduct was sufficiently pervasive or severe to alter the conditions of employment and create a hostile work environment; and (4) there is some basis for imputing liability to the employer.  *Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 266 (4th Cir. 2001) (*citing Smith v. First Union Nat'l Bank*, 202 F.3d 234, 241 (4th Cir. 2000)).

Undoubtedly Mazzo's conduct was unwelcome.  *See generally* Am. Compl.  In addition, liability may be imputed to Northrop Grumman because Mazzo was Wolff's supervisor.  *See Burlington Industries, Incorporated v. Ellerth*[4] and *Faragher v. City of Boca*

---

[4]524 U.S. 742, 765 (1998).

6

*Raton*,[5] (holding that an employer is vicariously liable for a hostile work environment created by a supervisor); *Ocheltree v. Scollon Prods., Inc.*, 308 F.3d 351, 355 (4th Cir. 2002) (*citing Faragher*, 524 U.S. at 808; *Ellerth*, 524 U.S. at 765).

Wolff contends that although Mazzo used vulgarities with males in the conference call, his language created images of Wolff engaging in sex acts with him and others.  Wolff Dep. 33-37.  Although Mazzo admits to directing vulgar language toward conference call participants, including Wolff, he claims that the words he used were intended only to reflect his anger, not to create sexual implications.  Mazzo Dep. 105-106.

To show that discrimination is gender based, the plaintiff must prove that the conduct in question was not "merely tinged with sexual connotations," but actually constituted *discrimination* because of sex.  *Oncale*, 523 U.S. at 81.  To determine whether conduct is discrimination because of sex requires the court to examine the objective severity of harassment from the perspective of a reasonable person in the plaintiff's position, considering the totality of the circumstances.  *Id.*

In *Lack v. Wal-Mart Stores, Incorporated*,[6] an employee was the object of offensive, vulgar, and sexually explicit comments

_____

[5] 524 U.S. 775, 808 (1998).

[6] 240 F.3d 255 (4th Cir. 2001).

from his supervisor on a regular basis. *Id.* at 257-58. The supervisor used graphic language toward many employees and was eventually terminated for his behavior. *Id.* at 260. The employee argued that although his supervisor used sexual language with other employees, when the language was directed to him, it was "obviously . . . because he was male." *Id.* at 261. The Fourth Circuit concluded that the employee had only offered sufficient evidence to show that the supervisor's conduct was sexually-tinged harassment. *Id.* Sexually-tinged harassment, without more, did not establish that the plaintiff was treated differently or with greater hostility because of his gender. *Id*.

Wolff was in charge of the troubled project about which Mazzo was complaining. It is plausible that the vulgarities toward Wolff were intended to convey Mazzo's displeasure with her control of the project and refusal to comply with his instructions. Wolff has not offered more than a scintilla of evidence that she was treated differently or with greater hostility than a similarly situated man would have been treated.

Even if she had shown that she was a victim of discrimination, Wolff has not demonstrated that Mazzo's treatment of her was so pervasive or severe as to alter the conditions of her employment and create a hostile work environment.

In determining whether conduct is sufficiently severe or pervasive to violate Title VII, the court must examine all the

circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (*quoting Faragher*, 524 U.S. at 788).

The conduct alleged here, although crude, does not rise to the level of sexual discrimination. Mazzo is accused of directing vulgarities toward Wolff on two occasions and once touching her back and shoulder. Am. Compl. ¶¶ 30-33. Three uncomfortable interactions over a period of fifteen years does not constitute a pervasive or consistent pattern of abuse. *See Hopkins v. Baltimore Gas & Electric Co.*, 77 F.3d 745, 753 (4th Cir. 1996) (finding offensive comments and single instance of touching employee's back over a seven year period insufficient to show discrimination); *Murray v. City of Winston-Salem*, 203 F. Supp. 2d 493, 499 (M.D.N.C. 2002) (finding pattern of off color remarks and once touching employee's thigh over period of three years insufficient to show discrimination).

Because Wolff has not adduced sufficient evidence to show that Mazzo's conduct caused her workplace to be more hostile

9

because of her gender or that the offending incidents were severe
or pervasive enough to constitute discrimination, Northrop
Grumman's motion for summary judgment will be granted.

    2.  Retaliation

    Wolff contends that Northrop Grumman retaliated against her
for filing a sexual harassment grievance in violation of Title
VII by failing to offer her a comparable position when it
purchased Litton Advanced Systems.  Am. Compl. ¶ 52.

    To establish a prima facie case of retaliation, the
plaintiff must show that: (1) she engaged in a protected
activity; (2) the employer took an adverse employment action
against her; and (3) a causal connection exists between the
protected activity and the asserted adverse action.  *Matvia*, 259
F.3d at 271 (*citing Von Gunten v. Maryland*, 243 F.3d 858, 863
(4th Cir. 2001)).

    By filing a grievance alleging sexual harassment, Wolff
engaged in an activity protected by Title VII.

    Title VII liability arises when an employer takes tangible
employment action against an employee.  *Boone v. Goldin*, 178 F.3d
253, 256 (4th Cir. 1999) (*citing Ellerth*, 524 U.S. at 742).
Tangible employment action includes, *inter alia*,  hiring, firing,
failing to promote, reassignment with significantly different
responsibilities, and significant changes in benefits.  *Id.*

    Wolff alleges that the position she was offered at Northrop

10

Grumman after its acquisition of Litton entailed far less challenging work and severely diminished management responsibilities.  Am. Compl. ¶ 52.  Had she accepted the position, Wolff would have received the same salary and benefits as she had before, would have had roughly the same number of suboridinates, and would have been responsible for a similar budget.  Norton Aff. ¶ 19.  The position offered did not provide Wolff with the level of responsibility to which she was accustomed.  *Id.*  This substantial change in the range of duties and supervisory authority offered to Wolff qualifies as a tangible employment action under Title VII.

To establish a causal connection between Wolff's complaint and Northrop Grumman's failure to offer her a position comparable to her previous job, Wolff must show that Northrop Grumman was aware of her grievance when making its employment decision. *Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.*, 160 F.3d 177, 181 (4th Cir. 1998) (*citing Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998)).  In addition, Wolff must offer some evidence to show that her grievance triggered Northrop Grumman's failure to offer her a comparable position.  *Id.* at 182.

Douglas Norton was responsible for the integration of Wolff's former organization into Northrop Grumman and for determining whether Wolff and similarly situated employees would

be offered permanent positions.  Norton Aff. ¶¶ 1-5.  Wolff told
Norton about her grievance during the process of negotiating her
employment within Northrop Grumman.  *Id.* ¶ 14.  Norton responded
by telling Wolff that she could talk to the human resources
department about the matter.  *Id.*

Norton selected a position he thought was an appropriate
match to Wolff's skills and interests.  *Id.*  Norton explained
that his decision

> on the structure of the . . . department following the
> integration . . . and specifically, of the position offered
> to Wolff and the duties [she would be assigned], was made
> solely as a result of my evaluation of the needs of the . .
> . sector.  I did not even consider the fact that Wolff had a
> grievance pending concerning Mazzo in making my decision
> about what duties and responsibilities Wolff would be
> offered.  No one at Northrop Grumman or Litton ever directed
> me to reduce or otherwise change the duties that I had
> determined were best suited for this position, as it was
> offered to Wolff.  In addition, the fact that Wolff is a
> female was not a factor that I considered in reaching my
> decision about what position to offer her.

*Id.* ¶ 15.

Wolff offered no evidence to refute Norton or that Northrop
Grumman's knowledge of her grievance affected the position it

offered her.  Accordingly, summary judgment for Northrop Grumman is appropriate on Wolff's claim of retaliation.

B.    State and Local Anti-Discrimination Claims

Section 16 of the Maryland Code provides that it is unlawful for an employer to "limit, segregate, or classify its employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect the individual's status as an employee, because of the individual's race, color, religion, sex, age, national origin, marital status, sexual orientation, genetic information, or disability." Md. Ann. Code art. 49B, § 16(a)(2) (1957, 1998 Repl. Vol., 2000 Cum. Supp.).  The Prince George's County Code forbids discriminatory practices based on race, religion, color, sex, national origin, age, occupation, marital status, political opinion, personal appearance, sexual orientation, physical or mental handicap, or familial status. The County Code, Prince George's County, Maryland, Division 12, §§ 2-185 (1999).  Because both the Maryland Code clause and the Prince George's County Code clause are "substantively similar anti-discrimination provisions" to the provisions of Title VII's anti-discrimination laws, gender discrimination claims under either Code are analyzed the same way that Title VII gender discrimination cases are analyzed. *See Magee v. Dansources Technical Servs., Inc.*, 769 A.2d 231, 243 (Md. App. 2001).

13

Inasmuch as Wolff was unable to survive summary judgment under Title VII, her state and local discrimination claims must fail as well.

C.    Breach of Contract

Wolff signed an "agreement to stay" with Litton before it was acquired by Northrop Grumman.  Pl.'s Summ. J. Ex. 3, attachment B.5 ("agreement to stay" between Wolff and Litton Advanced Systems).  The "agreement to stay" provides that:

> If your employment with [Litton] is involuntarily terminated prior to January 4, 2002, [Litton] agrees to pay you, in addition to any other compensation due, ½ of your then current annual base salary and six (6) months health insurance, provided that:
>
> a.    You continue to devote your best efforts on behalf of the company's business;
>
> b.    You have not resigned or been terminated for cause; and
>
> c.    In the event of a sale, merger or other business combination, you have not been offered by the successor company, a comparable position on similar terms and conditions.

*Id.*  Wolff argues that Northrop Grumman, by failing to offer her a comparable position after it acquired Litton, breached the "agreement to stay," involuntarily terminated her, and owes her compensation under the contract.

14

Maryland law, applicable here, "ascribes to undefined contractual terms their customary or ordinary meaning." *Scarborough v. Ridgeway*, 726 F.2d 132, 135 (4th Cir. 1984) (*citing C & H Plumbing & Heating, Inc. v. Employers Mut. Cas., Inc.*, 287 A.2d 238, 239-41 (Md. 1972)).  This is true even when "the parties to a contract fail[] to provide for a contingency which afterwards happened because at the time the contract was made it did not occur to either [contracting party] that such a contingency would or could happen."  *United States Fid. & Guar. Co. v. French Mut. Gen. Society of Mut. Ins. Against Theft*, 212 F. 620, 626 (4th Cir. 1914).

The "agreement to stay" requires that the employee not be terminated for cause and not resign.  By resigning, Wolff precluded the possibility of  payment under the agreement. Accordingly, Northrop Grumman's motion for summary judgment will be granted.

## CONCLUSION

For the reasons stated above, Northrop Grumman's motion for summary judgment will be granted.

November 19, 2003                  /s/
Date                          William D. Quarles, Jr.
                         United States District Judge